## Foye *vs.* Leighton *& a.*

A deposition, taken when both parties are present, but not in the form of answers to written interrogatories appearing in the deposition, as is prescribed in the 22d rule of Court, must be objected to at the time of the caption ; otherwise, the objection will be considered as waived.

Where a witness testified that he inquired of one of the defendants whether the plaintiff was at work for him and the other defendant, and the defendant replied that he was, and stated the reason why he had made the inquiry to be that he had talked with the plaintiff about working in his yard, it was *held*, that the statement of the reason for the inquiry by the witness, furnished no sufficient ground for setting aside the verdict.

The introduction of evidence, in proof of a fact which is not ordinarily competent for that purpose, will not furnish sufficient cause for setting aside a verdict, if the fact be admitted by the other party, or distinctly proved by him, or indisputably appear, and be found to exist upon other competent evidence in the case.

Where the object of the inquiry made of a witness was merely to lay the foundation for the introduction of a receipt, and the answers were addressed to the court and permission was given to the opposite party to cross-examine the witness as to the existence of the receipt, and as to the person into whose possession it passed ; and the court, upon objection made in the course of the cross-examination, refused to permit the party to put to the witness the enquiry, "With whom did you do the business ?" it was *held*, that the refusal being upon the mere preliminary question stated, and the competency and sufficiency of the evidence introduced before the court to lay the foundation for the secondary evidence not being contested, proved no sufficient reason for disturbing the verdict.

When a witness was objected to upon the ground of interest, and, upon the ruling of the court, rejecting him, the party offering the witness released him

Foye *v.* Leighton.

from the alleged interest, and he was then permitted to testify, it was *held,* that the exception to the ruling of the court was thereby waived.

The law requires that a party should furnish the best evidence which the nature of his case admits of, and which is in his power.

It has long been held, upon this principle, that when there is a subscribing witness to a written instrument, and he can be had, he must be produced ; as furnishing the best evidence of its execution.

Where the action was to recover for services rendered for the defendants, L. and W., in making bricks prior to the 12th day of July, and it appeared that on that day, L. sold out to W. his interest, and that the plaintiff then quit work, and L. went away, and these facts were not contested, and the question in the case was as to the joint employment and liability of L. and W., it was *held,* that evidence of a witness that he labored and burnt a kiln at the yard for L. alone, about the first of July, was immaterial, unless it appeared that the burning took place prior to the 12th day of July.

Where a receipt was shown to be in the possession of W., one of the defendants, and notice was given to produce it, and there was a refusal, and a witness testified that P. W. paid him five dollars, and wrote a receipt, which he signed, and which was read aloud in the presence of W., and was taken up by W., and which (receipt) he thought read thus : " Received five dollars of L. and W., (the defendants,) in full for labor done for them at making brick at E.," it was *held,* that the contents of the receipt were shown with sufficient precision, and that it was competent for the jury to weigh the evidence, and therefrom to determine what were the contents of the receipt; and that there was no error in the court in refusing, when requested, to instruct the jury that the evidence as to " the contents of the receipt should show precisely its contents, in order to be of any effect, and that it should not be left to them to weigh probabilities as to the contents of the paper."

Where an action was brought to recover of L. and W. wages for labor done at a certain brick-yard at E., at a particular time, and it appeared that L., one of the defendants, hired the plaintiff, and that at the same time F. labored in the same yard with the plaintiff and others, in the same business, and was also hired by L., and a settlement took place with F., and a payment was made to him, and that W. was present, and a receipt was given by F. to L. and W. "in full for labor done for them at making brick at E.," and was accepted by W. ; it was *held,* that the receipt was, under the circumstances, evidence of a joint liability of the defendants to the plaintiff.

Where the defendants proposed to prove that after the commencement of the action, one of the defendants paid the plaintiff a certain sum on account of the labor and services sued for and the costs of the action, by way of reducing the damages, and the court held that if admitted it would operate as an admission of a joint liability ; and the defendants thereupon excepted to that ruling, and declined to introduce the evidence,—it was decided that the election to withdraw the evidence removed all ground of exception which might have existed upon its introduction.

Assumpsit, upon an account annexed, for labor and services. The defendants severally pleaded the general issue.

To prove that the defendants were jointly interested in the business of making bricks in the brick-yard in which the plaintiff labored, the plaintiff offered evidence tending to prove that the groceries used at the house where the defendants and the persons in their employment boarded, were obtained at the store of one Clark, sometimes by one of the defendants and sometimes by the other, and that the articles so obtained were charged to Leighton and Winkley, to their knowledge, and without objection from either. And Clark, who was a witness introduced by the plaintiff, testified that before he saw either of the defendants, Paul Winkley, the father of Mark H. Winkley, one of the defendants, and father in law of Leighton, came to his store and proposed to sell him a horse, which he said belonged to Mark, representing to him that " the boys (meaning the defendants) were coming down there to make brick, and would want things out of his store in payment." To this evidence the defendants objected, but the court admitted it. It appeared that when the defendants came, Clark purchased the horse which Mark H. Winkley brought and delivered, and the price was credited upon the account of Leighton and Winkley, and paid for by goods and money delivered to one or the other of them indifferently, and charged upon that account.

The deposition of Stephen Leighton was objected to by the defendants because it was not taken by questions and answers ; but as no such objection appeared to have been taken at the caption, the court held the objection waived. This witness stated an inquiry, which he made of Mark H. Winkley, whether the plaintiff was at work for him and Leighton, and Mark's answer that he was. He stated the reason why he made the inquiry, to be that he had talked with the plaintiff about working in his yard. To the admission of this reason the defendants objected, but the court admitted it.

John S. Foye testified, that he worked in the same brick-yard and was hired by Samuel Leighton, one of the defendants, as it

appeared the plaintiff was ; that he was settled with and paid at the house of Paul Winkley, in the evening ; that Samuel Leighton was there in the early part of the evening, but was obliged to go away. After a conversation between him and Mark and Paul, which lasted till late at night, Paul paid him five dollars, and wrote a receipt, which he thought read thus :

" Received five dollars of Samuel Leighton and Mark H. Winkley, in full for labor done for them at making brick at Exeter," which was read aloud in the presence of Mark, and signed by the witness and left on the table, and he thought was taken up by Mark. The defendants' counsel in the cross-examination asked the witness, " With whom did you do the business ?" to which the plaintiff's counsel objected, and the court held it inadmissible.

Before the witness was examined as to the contents of the receipt, the defendants asked and had permission to cross-examine the witness as to its existence, and into whose possession it passed ; and the question last stated was proposed and rejected upon that cross-examination.

The defendants offered as a witness, Paul Winkley, who was objected to by the plaintiff on the ground of interest, to prove which he introduced another witness who testified that about two weeks ago, in his hearing and in the presence of Mark H. Winkley, and as he believed of Samuel Leighton, Paul Winkley stated that he had told the boys that if they would get this case back into court it should not cost them any thing. He should see to it himself. The defendants objected to this testimony, as insufficient, and the court held the witness inadmissible. The defendants then offered a release, and the witness was sworn and testified.

Paul Winkley testified that the brick-yard was hired by himself and Samuel Leighton, and he produced a paper, which he said was the lease. This paper the defendants then proposed to read, but the plaintiff's counsel objecting, the court ruled that it could not be read unless proved by the subscribing witnesses.

It appeared in evidence that on the 12th of July, Leigh-

ton sold out his interest to Mark, who agreed to take the property and pay the debts; and that the plaintiff then quit work and Leighton went away; and this fact was not contested. A witness was introduced by the defendants, who testified that he burned a kiln of bricks at the yard in Exeter, *about the first of July*, for Samuel Leighton. The court held the evidence immaterial unless it appeared affirmatively that the kiln was burned before the 12th of July.

The defendants' counsel requested the court to instruct the jury that the evidence of John S. Foye as to the contents of the receipt before mentioned, should show precisely the contents thereof, in order to be of any effect, and that it should not be left for the jury to weigh probabilities as to the contents of the paper. But the court declined to do so. This evidence was offered as secondary proof of the contents of the receipt after notice given to the defendants to produce the paper, and they had failed to produce it.

The court instructed the jury that the fact that Mark H. Winkley was present at the settlement made with J. Smith Foye, who was hired by Leighton, and knew that the receipt written for him to sign was in full for labor done for Samuel Leighton and himself, and that he made no objection, but took the receipt so written, was competent evidence to show an original joint liability on the part of the defendants to the plaintiff.

The defendants proposed to prove that since the commencement of this action, one of the defendants had paid the plaintiff a certain sum on account of the labor and services sued for, and the costs of the suit, by way of reducing the damages. The court held that if admitted, such evidence must operate as an admission of the joint liability of the defendants. To this ruling the defendants excepted, and declined to introduce the evidence.

The rulings and instructions before stated were excepted to. And the jury having found a verdict for the plaintiff, the defendants moved that it be set aside by reason of said exceptions.

*Soule* and *J. S. Wells*, for the defendants.

1. The deposition of Stephen Leighton was improperly admitted. Rule of Court, No. 22.

2. Paul Winkley's declarations were not evidence; certainly not against Samuel Leighton.

3. The reasons assigned by Stephen Leighton for the inquiry made of Mark H. Winkley were not competent evidence. 1 Starkie's Evi. 40.

4. The proposed inquiry and the cross-examination of John S. Foye should have been allowed. 2 Phillips' Evi., note, 842, p. 1192; *Thayer* v. *Middlesex Ins. Co.*, 10 Pick. 329; 1 Greenl. Evi., § 560, note 2.

5. The court erred in rejecting the evidence of Paul Winkley. To exclude him, he must have had a legal pecuniary interest, and the paper testified to by Winkley should have been read; as the defendants were not bound to produce the subscribing witnesses, it not being the foundation of the proceedings.

6. The court should not have excluded the testimony of the burning of the kiln of bricks about the first of July for Samuel Leighton; for the jury might have found, by aid of that evidence, that the kiln was burned before the 12th of July.

7. The request of the defendants as to the instructions upon the testimony of John S. Foye should have been complied with. *United States* v. *Brittain*, 2 Mason's Rep. 468; *Taylor* v. *Riggs*, 1 Peters' Rep. 591, 599, 600.

8. The court erred in instructing the jury that the receipt given to Mark H. Winkley by J. Smith Foye was evidence of an original joint liability *on the part of the defendants*. It was not evidence of such liability against the defendant, Leighton.

9. The payment after suit brought was not evidence of a joint liability, but should have been allowed to reduce the damages, if the plaintiff established a joint liability; which, under the general issue he was bound to do. *Bank* v. *Brackett*, 4 N. H. Rep. 557.

*Christie* and *Kingman*, for the plaintiff.

1. The objection to Leighton's deposition that it was not taken by questions and answers was properly overruled, on the ground

of waiver by the defendants, they having attended the caption and then made no objection on this account. It would be a fraud on the plaintiff for the defendants to object or be allowed to object at the trial, having foreborne to do so at the caption.

Where the adverse party appearing at the caption, makes there no objection to the notice, time, or place, or the form of the questions, he will not be allowed to do so at the trial.

The court's rules require exceptions to the ruling and charge of the court, to be handed to the presiding justice in twenty-four hours after the verdict, so that briefs shall be furnished and pleas filed within certain times; but these rules are often waived, and dispensed with, by agreement of parties, the court consenting. So the rule of court under consideration may be waived.

2. The reason that the defendant assigned for making the inquiry specified, of Mark H. Winkley, was admissible, as having a tendency to show that it was material, and probable that he should make such an inquiry, and remember the reply.

3. The conversation or statements of Paul Winkley to the plaintiff's witness, Clarke, about the horse, and the boys coming down to make brick, &c., as stated by said Clarke, was merely introductory to what followed or took place between the witness and the defendants, and what was confessedly a complete and perfect fulfillment of what Paul said was about to take place. The whole matter being otherwise proved, Paul's statements, even verified, and if not strictly admissible, could be no detriment to the defendant, but were in fact wholly immaterial. *Knowles* v. *Dow*, 2 Foster's Rep. 387.

4. The question to John S. Foye was properly disallowed. It was in a preliminary cross-examination on a question to the court, and was properly to be confined to the points of inquiry before the court, which were the existence of the writing, and who took it. This inquiry was not pertinent to either of those points, but was an attempt to wander beyond legitimate bounds, and the court, in their discretion, having all the facts before them, disallowed it, as they had a right, and in fact were bound to do.

5. The plaintiff was properly allowed to prove the contents of

the receipt, as well as he could by any one who had read it, or heard it read, after having proved its existence and shown it in the hands of the defendants, and due notice to them to produce it, and their refusal so to do. They are not to be heard to complain of our proof of its contents under these circumstances.

Woods, J. The objection taken to the deposition of Stephen Leighton cannot be sustained. The objection is to the manner in which the testimony was taken. By the 22d rule of court, testimony, contained in depositions, to be used either in courts of common law, or chancery, is to be taken upon written interrogatories, proposed at the time, by the counsel, and administered by the magistrate; and " the interrogatories, as well as the answers thereto, must appear in the deposition, and the answers must follow each interrogatory as it is administered." Such is the method of taking depositions prescribed by the rule of court referred to. In the present instance the requirements of the rule were not followed, and the evidence, contained in the deposition, was not taken in the form of questions and answers written in the deposition. If the exception taken at the trial had been taken at the caption of the deposition, it must have prevailed. But the objection is one of a character that may be waived. The defendants were present at the caption, and having an opportunity to object, but omitting to do it, must be taken to have waived the objection. If the objection now urged to the regularity of the caption, had been brought to the notice of the magistrate at the time of it, it might and doubtless would have been corrected. The objection being of a character that could be waived, or that might have been obviated, if taken at the caption, comes too late at the trial, when there is no opportunity to correct it, and justice and fair dealing require that it should be regarded as waived. *Gear* v. *Smith*, 9 N. H. Rep. 63 ; *Whipple* v. *Stevens*, 2 Foster's Rep. 219.

The statement, by Leighton, of the reason for making the inquiry of Mark H. Winkley, proved by the case, was not improper. It was a fact connected with the transaction, and was

introduced as showing its probability. If the witness had stated that the plaintiff requested him to make the inquiry of Mark, it would hardly be supposed that a statement of that fact would be exceptionable, and the addition of the fact that it was for the reason of that request that he did it, could, we think, form no reasonable ground of exception. The statement of the reason for the act, in the present case, we regard as standing on a similar ground.

Clark's testimony cannot avail the defendants as a ground for sustaining their motion for a new trial. The purpose of it was to show that at the time when the plaintiff labored in the business of making bricks, and boarded at the same house where the defendants, and other persons laboring in their employment in the same business boarded also, the groceries used at the house were purchased upon the joint credit of the defendants; were delivered, a part to the one and a part to the other, indifferently, and charged to them on their joint account, with their knowledge and assent. The case finds that the other evidence offered in the case tended to prove that state of fact, and that "it appeared that when the defendants came, Clark purchased the horse which Mark H. Winkley brought and delivered, and the price was credited upon the account of Leighton and Winkley, and paid for by goods and money delivered to one or the other of them indifferently, and charged upon that account." Here, then, the fact which it was the object of the testimony of Clark to show is found by the case to have been made to appear, and the evidence upon which it was made to appear was not objected to. The evidence to which the objection applies is that in reference to the interview between Paul Winkley and the witness, and Winkley's proposition to sell the horse to the witness, and his representation that the defendants "were coming down there to make bricks, and would want things out of his store in payment." Now if this evidence may not be regarded as being unexceptionable upon the ground that it is merely introductory, we think its reception can form no ground for setting aside the verdict, since the only facts which it can be considered as tending to prove,

were made to appear at the trial upon other evidence, as is expressly found by the case. It certainly could not be regarded as proof going farther, and proving facts beyond what the other evidence tended to prove, and what it is found by the case were thus proved. In *Wiggin* v. *Damrell*, 4 N. H. Rep. 74, it was holden, that where a party, at the trial, virtually admitted a fact, the introduction of incompetent evidence, for the purpose of proving the same fact, would constitute no ground for setting aside a verdict. In *Knowles* v. *Dow*, 2 Foster's Rep. 387, a witness for the defendant was admitted to testify to a fact which had already been proved by the plaintiff's witnesses. The evidence was objected to, and it was decided that the objection, resting on the ground of interest in the witness, was obviated by the other proofs in the case, and formed no sufficient reason for disturbing the verdict. We think the case under consideration falls distinctly within the principle of the decided cases referred to. A party is in no wise prejudiced by the introduction of incompetent evidence of a fact which he distinctly admits, or himself proves by his own evidence, or which indisputably appears, and is found to exist upon the other competent evidence in the case, by whichever party the same may be introduced. When a fact is no longer in dispute, it would seem to afford but a feeble reason for setting aside a verdict, that evidence, ordinarily incompetent to prove the same fact, may have been admitted in the course of the trial having a tendency to prove it.

The sole and only legitimate ground upon which verdicts are set aside, when incompetent evidence has been admitted, is, that the party objecting to it has been prejudiced thereby. But it is apparent that no prejudice could result from the introduction of the evidence of which complaint is made, and this ground of objection cannot avail the defendants.

The ruling of the court relative to the question propounded to Foye furnishes no proper ground for setting aside the verdict. The inquiry then being made, when the question was put to Foye and rejected, was as to the existence of the receipt of Foye to Leighton and Winkley, and whose possession it passed into. Its

object was to lay the foundation for the introduction of secondary evidence of its contents, and the evidence was merely preliminary, and addressed to the court and not to the jury, and could therefore have no relevancy to the issue between the parties, nor legitimately influence the verdict. It is not objected that the evidence adduced and laid before the court was not both competent and sufficient to furnish ground for the admission of the secondary evidence. Full permission was given the defendant's counsel to cross-examine the witness, both as to the fact of the existence of the receipt and as to the person into whose possession it passed, they being the only facts sought to be established by that examination. The inquiry of the defendants' counsel, however, took a wider range than was required to elicit the facts necessary to the object of the inquiry, and the ruling of the judge operated only as a restriction of that inquiry within its legitimate limits. We think, therefore, for all these reasons, that this exception taken at the trial cannot avail the defendants.

It is not necessary to decide the question raised as to the propriety of the ruling of the court as to the sufficiency of the evidence offered by the plaintiff to exclude Paul Winkley as a witness, upon the ground of interest. Upon the ruling of the court that the witness was inadmissible, the defendants offered a release, and thereupon the witness was admitted and sworn. The course pursued operated as a waiver of the objection. The party, instead of relying upon the exception, chose to remove the foundation of it by releasing the interest, if any existed, and in that way he availed himself of the full benefit of the testimony of the witness. The release of the interest, and the introduction of the evidence removed all pretence of any ground of objection, for the party had what he demanded, namely, the benefit of the testimony of the witness.

The ruling of the court, that the lease produced by Paul Winkley could not be given in evidence, without proof of its execution by the subscribing witnesses, was correct. The law requires the best evidence which the nature of the case admits of. And it has been long held, upon that principle, that

where there is a subscribing witness to a written instrument, he must be produced, as furnishing the best evidence of its execution. There are exceptions to this rule, arising from circumstances beyond the control of the party offering the evidence, as the death of the witness, or, the fact that it may be, for some other cause, beyond the power of the party to produce the witness. *Farnsworth* v. *Briggs*, 6 N. H. Rep. 561 ; *Dunbar* v. *Mardin*, 13 N. H. Rep. 311. No such ground of exception, however, existed in the present case, and therefore the general rule was properly applied.

The fact that a witness who was introduced by the defendant had burnt a kiln of bricks for Samuel Leighton, one of the defendants, about the first of July, was wholly immaterial to the issue, unless it was burnt before the 12th of July. There was no claim made for services rendered after that time. The object of the testimony was to prove that the business of brick making done at the yard was done on account of Leighton alone, and not on account of Leighton and Winkley. But the case finds that the plaintiff left work in the yard, and Leighton went away on the 12th day of July, and that those facts were not contested. Upon the admitted state of facts, then, it could not be pretended that evidence that the witness burnt a kiln of bricks after the 12th of July for Leighton, could have any legitimate tendency to prove that Leighton was carrying on the business at the yard upon his individual account, or that Leighton and Winkley were not carrying on business there on their joint account prior to that date, and that the plaintiff labored for Leighton alone. The ruling of the court in this particular was in accordance with this view of the case, and therefore we think unexceptionable.

John S. Foye gave evidence of the contents of the receipt executed by him, and which was shown to have passed into the possession of Mark H. Winkley, one of the defendants, they having been first notified to produce it. He testified that after a conversation between the witness and Paul Winkley and Mark H. Winkley, Paul paid him five dollars, and wrote a receipt, which he thought read thus : " Received five dollars of Samuel

Leighton and Mark H. Winkley in full for labor done for them at making brick at Exeter." It was contended at the trial, and the court were requested to instruct the jury, that the evidence of Foye as to the receipt should show precisely its contents, in order to be of any effect, and that it should not be left for the jury to weigh probabilities in reference thereto. But the court declined so to instruct them. The question is whether the instruction should have been given that was requested. The rule of law upon this subject would seem to be well settled in the books. The evidence offered was secondary proof of the contents of the receipt after notice given to the party having possession of it to produce it, and after his refusal to do so. It is well settled that even a refusal, on notice to produce, shall not be taken to establish the writing as claimed by the party giving the notice, nor as *prima facie* evidence that, if produced, it would prove what the party calling for it alleges. In such case some general evidence of its contents must be given, or at least of such parts of its contents as are applicable to the case. And the rule recognized by many authorities would seem to be, that after that, every doubt, every thing equivocal, imperfect, vague or uncertain in the secondary evidence, as in dates, sums, boundaries, &c., and whatever is mentioned shall be made against the party who might remove all doubt by producing the higher evidence. *Life and Fire Insurance Co.* v. *the Meacham Fire Insurance Co. of New-York,* 7 Wend. Rep. 31; 4 Burr. 2484; Cowen & Hill's Notes, part 2, note 842, page 1192. In short, every fair presumption that can arise is to be made against such party, as to those portions of the contents which are not made to appear by the secondary evidence. *Lymington* v. *McLin,* 1 Dev. & Batt. 291. Where a defendant gave general evidence by a witness that a deed then in court, in possession of the opposing party, who upon notice refused to produce it, had been in the possession of the witness, and that he had often read it, and that he always supposed the premises in question were included in it, but the witness when cross-examined said he could not recollect the boundaries, nor state a single course which it contained, it was de-

cided, by the supreme court of New-York, that the testimony was competent to go to the jury, with strong intimations that they ought to believe that the premises were included in the deed. *Jackson* v. *McVey*, 18 Johns. Rep. 330. In conformity with the rule stated, and the case cited in illustration of it, no doubt exists that the evidence admitted in the present case was sufficiently definite, and clearly competent to be submitted to the jury, in proof of the contents of the receipt in question. In fact, the evidence offered here was much more certain and definite than that which was held to be competent in *Jackson* v. *McVey*, before cited.

In the present case the witness thought he gave the exact words of the receipt, while, in the case last referred to, the witness could only state that, having often perused the deed he always supposed the premises in question to be included in the deed, but that he had a very imperfect recollection of the boundaries in the deed, and could not from recollection state a single course which it contained. We entertain, therefore, no doubt of the propriety of the course of the court in refusing to direct the jury in the manner requested.

There can be no doubt that the receipt of Foye, to Leighton and Winkley, was one in proper form, and a proper instrument to be given, and such as would usually be given in discharge of a joint liability on their part, rather than of the several liability of either of them. Its tendency then is to show that it was given for that purpose. Mark H. Winkley accepted it, and thereby recognized and adopted it as a proper instrument for the purpose for which it was designed. No doubt, we think, can be entertained that it legitimately tended to show a joint employment of J. Smith Foye by the defendants.

It, moreover, tended to show that the business at the yard was carried on upon the joint account of Leighton and Winkley. And the plaintiff, having been employed by the same person, and having labored in the same business, at the same time, and at the same yard with J. Smith Foye, it may well be presumed, also, from the settlement made with J. Smith Foye, and the re-

ceipt given by him to Leighton and Winkley, and accepted by them, that the plaintiff was also employed upon their joint account. It is not pretended that a portion of the laborers rendered service there upon the individual account of Leighton, while others were laboring on the joint account of Leighton and Winkley. No such position as that was assumed at the trial. The receipt then, under the circumstances, we think tended to show a joint liability of the defendants to the plaintiff.

The evidence which the defendants proposed to offer of a payment, since the commencement of this action, on account of the services sued for, was withdrawn upon a suggestion or ruling of the court as to its legal operation as evidence in the cause. This withdrawal carried with it all grounds of exception which might have existed if the evidence had been laid before the jury, and the ruling had been such as was suggested it would be. The evidence offered was not rejected by the court. At most, the court suggested what the ruling would be as to its effect, if introduced into the cause, and the party elected to withdraw it. There was then no ruling upon the evidence, nor any ruling rejecting it, for none was finally offered. The exception in this particular cannot prevail.

We see no ground upon which the motion for a new trial can be sustained, and therefore there must be

*Judgment on the verdict.*